Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*

**26 CV 1009**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AAKASH DALAL, | Civil Action No.: |
| Plaintiff, | |
| Vs. | |
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK and JOHN DOES 1-20, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

RECEIVED
SDNY PRO SE OFFICE
2026 FEB -5 AM 10: 59

## JURISDICTION & VENUE

1.    The United States District Court for the Southern District of New York has jurisdiction has jurisdiction over this matter pursuant 28 U.S.C. § 1332(a)(1), as this action arises between citizens of different states and the matter in controversy exceeds the sum and value of $75,000.

2.    Venue in the Southern District of New York is proper because a substantial part of the events and actions herein arose in New York, New York. 28 U.S.C. § 1391(b)(2).

## PARTIES

3.    Plaintiff Aakash Dalal ("Plaintiff") is a resident of Bridgeton, New Jersey and was at all relevant times herein a resident of New Jersey.

4.     Defendant The Trustees of Columbia University in the City of New York (hereafter "Columbia University" or "Defendant") is a New York not-for-profit corporation with its principal offices in New York, New York. The Trustees of Columbia University is the governing body vested with the management and control of Columbia University--a private research university located in New York. Columbia University's principal office is located at 622 West 113th Street, New York, NY 10025.

5.     Defendants John Does 1-20 are yet unknown employees of Columbia University who are responsible for the actions and omissions stated herein.

## STATEMENT OF FACTS

### Plaintiff Applies for Admission to Columbia University

6.     Columbia University is a prestigious private research university based in New York City, which has undergraduate and graduate programs, and a multi-billion dollar endowment.

7.     In late 2009, while Plaintiff was a 17-year old high school student, he applied for undergraduate admission to Columbia University. As a part of his admissions application, Plaintiff was required to and did provide Columbia University with his personal information, including his name, address, date of birth, social security number, driver's license number, his high school transcripts, credit card information, and other personal identifiers and data ("Private Information"). Plaintiff also paid Columbia University the requisite application fee.

8.     Plaintiff reviewed Columbia University's policies and other statements and notices, and based on his review of and reliance on these documents and Defendant's assurances, he believed that Defendant would secure his Private Information. Plaintiff further reasonably

believed that Columbia University would discard his Private Information after a reasonable period of time.

9.    Plaintiff has been extremely cautious and careful with his Private Information. Had Plaintiff known of Defendant's deficient security protocols, he would never have disclosed his Private Information to Defendant.

10.   Columbia University inexplicably retained Plaintiff's data in its systems for the next 16 years and left it unencrypted and unsecured.

11.   Defendant stored Plaintiff's Private Information detailed above in the part of Defendant's system that was compromised and hacked in the Data Breach.

12.   This type of Private Information is extremely sensitive and valuable to criminals because it can be used to commit serious identity theft and fraud related crimes.

13.   Defendant, through its public statements, privacy notices, and contractual agreements, promised to: keep Private Information private; comply with industry standards related to data security and private information, including Federal Trade Commission and United States Department of Education guidelines; inform applicants, students, and prospective students of its legal duties and comply with all federal and state laws protecting their Private Information; only use Private Information for reasons that relate to the application process and provide adequate notice if Plaintiff's Private Information is disclosed without authorization.

14.   By obtaining, collecting, and storing Plaintiff's Private Information, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiff's Private Information from unauthorized disclosure.

15.   Plaintiff took reasonable steps to maintain the confidentiality of his Private Information.

16.    Plaintiff relied on Defendant to keep his Private Information confidential and securely maintained, to use this information for application and educational purposes only, and to make only authorized disclosures of this information.

17.    Defendant could have prevented the data breach described below, which began no later than May 2025, by adequately securing and encrypting or more securely encrypting its servers that stored Plaintiff's Private Information.

### The Columbia University Data Breach

18.    During the regular course of conducting its business and operations, Defendant acquired, collected, and stored applicants', students', and prospective students' personally identifiable information ("PII") and personal health information ("PHI") for the purpose of the college admissions process.

19.    Defendant was well aware of the dangers of data breaches, and Defendant was at all relevant times herein aware that its applicants', students, and prospective students' information is highly sensitive and could be used by hackers and criminals for illegal purposes such as identity theft.

20.    On or about May 16, 2025, as a result of Defendant's deficient security protocols, unauthorized third-party cybercriminals (hackers) gained access to applicants', students', and prospective students' Private Information that Defendant stored on its networks with the intent of engaging in the misuse of the Private Information, including marketing and selling customer Private Information (hereinafter the "Data Breach").

21.    The hacking group, which was known to sell stolen data on the dark web and engage in crimes including identity theft, exploited a known vulnerability that could have been easily guarded against by Columbia University.

22. The hacking organization stole nearly 460 gigabytes of data from Columbia University's servers. This data set included over 1.8 million social security numbers. The expansive data breach resulted in the theft of the sensitive Private Information and PII of nearly 870,000 individuals, including Plaintiff.

23. According to Bloomberg News, a Columbia University official informed the media outlet that the hacking group was "highly sophisticated" and that the breach was "very targeted."

24. On June 24, 2025, Columbia University experienced a technical outage that disrupted its network. Upon further investigation, Columbia University realized its network had been compromised for well over a month and the hacking group had free access to its systems during this time period. Columbia further determined around this time period that the sensitive personal information of hundreds of thousands of individuals, including Plaintiff, had been stolen.

25. On August 7, 2025, Columbia University promised that it would begin to notify affected individuals, whose data had been stolen, of the breach on a rolling basis.

26. On January 2, 2026, Columbia University mailed Plaintiff a notice stating that his data had been stolen by hackers as a result of the aforementioned data breach. Columbia University's notice stated as follows:

"What Information Was Involved?
We can confirm that the following information of yours was affected: name, data of birth, and Social Security numbers. The affected data may have also included your contact details, demographic information, academic history, financial-aid related information, and any insurance-related information."

27. In its notice, Columbia University further explained, "This notice has not been delayed by law enforcement."

28.    It is clear that cybercriminals exfiltrated Plaintiff's Private Information due to

Defendant's failure to implement appropriate data security safeguards to protect this

Private Information. The exfiltrated Private Information at issue included but is not

limited to: name, address, date of birth, email, phone number, Social Security number,

academic records, high school transcripts, health information, account and credit card

numbers, and data points.

**Defendant's Negligent and Failed Response to the Data Breach**

29.    Defendant's investigation determined that Plaintiff's and other applicants', students, and

prospective students' Private Information was compromised in the Data Breach. This

Private Information included Plaintiff's first name, last name, date of birth, policy

numbers, addresses, email addresses, phone numbers, Social Security number, credit card

information, financial account information, driver's license numbers, academic records,

and high school transcripts.

30.    Defendant waited almost two months after it initially discovered the Data Breach to begin

notifying affected individuals and claimed it would notify affected individuals on a

"rolling basis." Plaintiff was notified by Defendant over six months after his data was

stolen.

31.    Omitted from the Data Breach Notice is information explaining the root cause of the Data

Breach, the vulnerabilities exploited by the hacking group, and Defendant's prior data

breach history and efforts to ensure similar breaches did not continue to occur, exposing

applicants', students', and prospective students' Private Information. To date, these

omitted details have not been explained or revealed to Plaintiff, who retained a vested

interest in ensuring that his Private Information is not repeatedly exposed to hackers by Defendant.

32. Defendant had and continues to have obligations under applicable federal and state laws, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiff's Private Information confidential and to protect such information from unauthorized access.

33. Plaintiff was required to provide his Private Information to Defendant as a result of their dealings. In furtherance of this relationship, Defendant collected and stored Plaintiff's Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

**The Data Breach Was Foreseeable**

34. The Data Breach was entirely foreseeable and avoidable. Columbia University knew that it was the subject of cyberattacks by hackers who were seeking to steal the data of its applicants, students, and prospective students. Columbia University was aware that attempts had been made by hackers to breach its network and systems. The institution was also aware that other colleges and universities had been subjected to data breaches by hackers.

35. Given the immense publicity Columbia University had garnered as a result of 2023 and 2024 campus protests related to the Israeli invasion of Gaza, Columbia University knew it would be targeted by hacking groups and foreign governments, including the Israeli government.

36.    Defendant, despite its assurances and knowledge of these incidents, failed to take reasonable steps to improve the weaknesses in its data security.

37.    Defendant's negligence in safeguarding Plaintiff's Private Information is exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by recent trending data breaches.

38.    Data breaches such as the one here have become so notorious that the Federal Bureau of Investigation (FBI) and the United States Secret Service have warned potential targets so they are aware of, can prepare, and ward off a potential intrusion.

39.    As a health insurer handling medical information, Defendant's data security obligations were particularly important given the substantial increase in cyber attacks and data breaches in the healthcare industry and other industries which held significant amounts of Private Information preceding the Data Breach.

40.    Although Defendant was well aware that Plaintiff's and other customers' Private Information was a target for malicious actors, Defendant failed to take appropriate steps to protect Plaintiff's Private Information from being compromised.

**Defendant's Obligation to Protect Plaintiff's Private Information**

41.    By failing to properly secure Plaintiff's sensitive data, Defendant breached duties it owed Plaintiff under statutes and the common law. Defendant had an implied duty to safeguard Plaintiff's highly sensitive personal data because Plaintiff provided it to Defendant under the implied condition that Defendant would keep it private and secure.

42.    The Federal Trade Commission Act, 15 U.S.C. § 45, prohibited Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security

for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act[1].

43.   The FTC has stated that data security should be factored into all business decisions. Accordingly, the FTC has issued several guidelines identifying best data security practices that businesses should employ to protect against the unlawful exposure and disclosure of Private Information.

44.   In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which establishes guidelines for fundamental data security principles and practices for business. The guidelines explain that companies should:

   a. protect the sensitive consumer information they keep;

   b. properly dispose of Private Information that is no longer needed;

   c. encrypt information stored on computer networks;

   d. understand their networks' vulnerabilities; and

   e. implement policies to correct security problems

45.   The FTC's guidelines recommend that businesses watch for large amounts of data being transmitted from their systems and have a response plan ready in the event of a data breach.

46.   The FTC further recommends companies not maintain Private Information longer than is necessary for authorization of a transaction, limit access to sensitive data, require complex passwords be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

---

[1] FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

47. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data. The agency has treated the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.

48. By failing to employ reasonable and appropriate measures to safeguard Plaintiff's Private Information against unauthorized access, Defendant breached its obligations and duties and its conduct constitutes an unfair act or practice under Section 5 of the FTC Act.

49. Due to the nature of Defendant's operations and application process, Defendant would be unable to conduct its regular business activities without collecting and aggregating PII it knows and understands to be sensitive and confidential.

50. Defendant explicitly proclaimed its commitment to protecting the privacy of Private Information for its applicants, students, and prospective students.

51. Plaintiff reviewed and relied upon Defendant's claims that it would protect his Private Information in making the decision to apply to Columbia University and disclose his Private Information.

## Defendant's Data Security Deficiencies

52. Prior to and during the time period when the data breach occurred, Defendant failed to implement proper data security measures. Defendant failed to adequate secure Plaintiff's personal information and data despite its assurances that it would do so.

53. Defendant failed to hire qualified personnel and maintain a system of accountability over data security, thereby knowingly allowing data security deficiencies to persist.

54. Defendant failed to properly train its employees about the risk of cyberattacks and how to mitigate them, including by failing to implement adequate security awareness training that would have instructed employees about the risks of common techniques, such as email phishing, and how to thwart or prevent them.

55. Defendant failed to address well-known warnings that its systems and servers were susceptible to a data breach.

56. Defendant failed to implement certain protocols that would have prevented unauthorized programs, such as malware, from being installed on its systems that accessed customers' personal information and otherwise would have protected customers' sensitive personal information.

57. Defendant failed to installed software, such as intrusion detection applications, to adequate track access to its network, monitor the network for unusual activity and intrusions, and prevent the exfiltration of data, which would have detected the presence of hackers and prevented customers' sensitive information from being stolen. There exist recommended and available measures to prevent data from leaving protected systems and being sent to untrusted networks outside of corporate systems.

58. Defendant failed to conduct an audit of its computer security protocols by qualified cybersecurity professionals and firms, including by failing to utilize well known techniques such a penetration testing.

**The Value of Plaintiff's Private Information**

59. Social security numbers and driver's license numbers are associated with a high risk of fraud and are highly valued on the black market as they allow criminals to apply for lines

of credit, file false tax returns, obtain unemployment benefits, work under false identities, manufacture fake IDs, and launch sophisticated social engineering attacks.

60. The hackers who breached Defendant's servers have posted the stolen data for sale on various websites and forums on the Internet, including on dark web marketplaces. These hackers have also stored the data in multiple locations and continue to sell it to "carders"—criminals who create fraudulent credit cards based on stolen personal information. Purchasers of this information have also resold it to criminals who engage in telemarketing schemes designed to further defraud Defendant's customers.

61. Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[2]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[3]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995[4].

62. Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches[5]. In 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches. These types of data breaches are increasingly common, especially among healthcare system, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.

---

[2] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, October 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/
[3] *Here's How Much Your Personal Information Is Selling for on the Dark Web,* Experian, December 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/
[4] *In the Dark,* VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/
[5] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/

63.   The FTC defines identity theft as "a fraud committed or attempted using the identifying

information of another person without authority." The FTC describes "identifying

information" as "any name or number that may be used, alone or in conjunction with any

other information, to identify a specific person," including, among other things, "[n]ame,

Social Security number, date of birth, official State or government-issued driver's license

or identification number, alien registration number, government passport number,

employer or taxpayer identification number."

64.   Identity thieves can use Private Information, such as that of Plaintiff's, which Defendant

failed to secure, to commit a variety of crimes that harm victims—for instance, identity

thieves may commit various types of government fraud such as immigration fraud,

obtaining a driver's license or identification card in the victim's name but with another's

picture, using the victim's information to obtain government benefits, or filing a

fraudulent tax return using the victim's information to obtain a fraudulent refund.

65.   There may be a gap in time or a lag between when the harm occurs versus when it is

discovered and when Private Information is stolen and when it is used. This is confirmed

by a U.S. Government Accountability Office's study on data breaches:

"[L]aw enforcement officials told us that in some cases, stolen data might be held for up
to a year or more before being used to commit identity theft. Further, once stolen data
have been sold or posted on the Web, fraudulent use of that information may continue for
years. As a result, studies that attempt to measure the harm resulting from data breaches
cannot necessarily rule out all future harm."[6]

66.   Defendant knew of the value of Plaintiff's Private Information and of the foreseeable

consequences that would occur if Plaintiff's Private Information was stolen, including the

---

[6] *Report to Congressional Requesters*, GAO, at 29 (June 2007)
https://www.gao.gov/new.items/d07737.pdf

significant costs that would be placed on Plaintiff as a result of a breach of this magnitude.

67.  Defendant is a sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew that the development and use of such protocols was necessary to fulfill its statutory and common law duties to Plaintiff.

68.  Armed with Plaintiff's Private Information exfiltrated during the Data Breach, cybercriminals can use or sell this information to further harm Plaintiff in a variety of ways, including destroying his credit by opening new financial accounts and taking out loans in his name, using Plaintiff's Private Information to obtain medical services improperly, using Plaintiff's Private Information to target other phishing and hacking intrusions; obtaining government benefits; and otherwise assuming Plaintiff's identity.

69.  As a result of the Data Breach, Plaintiff now faces a substantial and ongoing risk of imminent harm relating to the exposure and misuse of his Private Information. Plaintiff has and will continue to suffer injuries associated with this risk, including but not limited to a loss of time, mitigation expenses, and anxiety over the misuse of his Private Information.

70.  Plaintiff has incurred and will continue to incur damages in the form of identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminished value of Private Information, loss of privacy, and additional damages.

71.  The Columbia University data breach was unique in the breadth of data stolen. Data breaches of businesses usually result in the theft of an individual's name, date of birth, credit card information, and possibly their social security number. Here, given the

amount of sensitive, personal information that was disclosed to Columbia University by applicants, including Plaintiff, the theft of the data has made it much easier for cybercriminals to engage in identity theft. Plaintiff's complete academic history, high school transcripts, and a variety of other personal information is now in the possession of hackers and fraudsters who have purchased it on the dark web.

72.     Many individuals, whose data was exfiltrated and sold as a direct result of the Columbia University data breach, have had their identities stolen, had false charges made to their credit card, and been subjected to other forms of fraud.

### Plaintiff's Data Breach Related Injuries

73.     Plaintiff's personal information and data were compromised and stolen by hackers as a result of the Data Breach and Defendant has determined that unauthorized access to his personal information has occurred. Plaintiff's personal information, including his social security number, driver's license number, date of birth, and academic history have been listed for sale and sold on dark web marketplaces by the hackers. Plaintiff's personal information and data is presently available for sale on dark web forums and vendors or through private transactions between cyber criminals known as "carders".

74.     As a result of the Data Breach, which was caused by Defendant's failure to implement appropriate security measures, Plaintiff now faces a significant and imminent risk of identity theft and fraud.

75.     As a result of the Data Breach, and consequently the theft and sale of his private information, Plaintiff has expended significant time mitigating the risk of identity theft and monitoring his financial accounts, credit cards, and credit related activity.

76.  Plaintiff has and will incur out of pocket costs for protective measures including identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

77.  Plaintiff has suffered a loss of value of his sensitive personal information when it was stolen by hackers in the Data Breach. A large underground market exists for the sale of stolen personal information and this market serves as a means to determine the loss of value to Plaintiff.

78.  Plaintiff will continue to spend substantial time monitoring his accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing his financial affairs more closely than he otherwise would have done but for the data breach. These efforts are even more burdensome and time consuming, particularly because Defendant has failed to disclose the specifics of when the data breach occurred, how it occurred, and how long it lasted.

79.  Plaintiff's risk for identity theft will persist for years because identity thieves and hackers store stolen data for months or years before using it to avoid detection. Further, because this data is often sold in small batches to various individuals and groups, Plaintiff will have to vigilantly monitor his financial accounts for the foreseeable future.

80.  As a result of the Data Breach, Plaintiff has suffered emotional distress, including anxiety and stress, as is aware of the financial misfortune he will now most certainly face.

## STATEMENT OF CLAIMS

### COUNT I:
### NEGLIGENCE

81.  Plaintiffs again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

82.  Defendant obtained Plaintiff's sensitive personal information as a result of Plaintiff's participation in Columbia University's applications process. Defendant, by collecting and maintaining this sensitive personal information, had a common law duty of care to use reasonable means to secure and safeguard the information and to prevent disclosure of the information to unauthorized individuals. Defendant's duty included a responsibility to implement processes by which it could both prevent a data breach and detect a data breach of this type and magnitude in a timely manner.

83.  Defendant further owed a duty of care to Plaintiff to provide data security consistent with various federal and state statutory and regulatory requirements by which it is bound.

84.  Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect applicants', students', and prospective students' sensitive personal information.

85.  It was foreseeable to Defendant that a failure to use reasonable measures to protect its applicants', students', and prospective students' sensitive personal information could result in injury to them. Further, actual and attempted breaches of data security were reasonably foreseeable to Defendant given the known frequency of data breaches. Indeed, the data breach at issue was foreseeable to Defendant as it previously suffered numerous cyberattacks, but continued to fail to rectify its deficient data security.

86.    As a direct and proximate result of Defendant's negligence, Plaintiff sustained the

damages and injuries described herein.

## COUNT II:
## NEGLIGENCE PER SE

87.    Plaintiffs again alleges and incorporates by reference all previous paragraphs set forth

above in this complaint.

88.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits organizations

such as Defendant from "using any unfair method of competition or unfair or deceptive

act or practice in or affecting commerce," including failing to use reasonable measures to

protect Private Information. In addition to the FTC Act, the agency also enforces other

federal laws relating to consumers' privacy and security. The FTC publications and

orders described above also form part of the basis above also form part of the basis of

Defendant's duty in this regard.

89.    In addition to the FTC rules and regulations and state law, other states and jurisdictions

where victims of the Data Breach are located require that Defendant protect Private

Information from unauthorized access and disclosure and timely notify the victim of a

data breach.

90.    Defendant violated FTC rules and regulations obligating companies to use reasonable

measures to protect Private Information by failing to comply with applicable industry

standards and by unduly delaying reasonable notice of the actual breach. Defendant's

conduct was particularly unreasonable given the nature and amount of Private

Information it obtained and stored and the foreseeable consequences of a Data Breach

and the exposure of Plaintiff's highly sensitive Private Information.

91.  Plaintiff is within the category of persons the FTC Act was intended to protect and the harm Plaintiff's suffered was the type of harm the FTC Act was intended to guard against.

92.  Each of Defendant's violations of Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitutes negligence per se.

93.  As a direct and proximate result of Defendant's negligence per se, Plaintiffs sustained the damages and injuries described herein.

## COUNT III:
## BREACH OF IMPLIED CONTRACT

94.  Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

95.  When Plaintiff provided his sensitive personal information to Defendant as a part of the college admissions process, he entered into an implied contract with Defendant under which Defendant agreed to take reasonable steps to protect his sensitive personal information.

96.  Defendant solicited and invited Plaintiff to provide his sensitive personal information as a part of Defendant's regular business practices. In order to apply to Columbia University, Defendant requires applicants to provide a fee and provide personal information sufficient to obtain Defendant's services. Plaintiff accepted Defendant's offers and provided his sensitive information to Defendant.

97.  When entering into the implied contract, Plaintiff reasonably believed and expected that Defendant's data security practices complied with relevant laws, regulations, and industry standards.

98.  Plaintiff reasonably believed that the money he paid to Defendant would be used in part by Defendant to obtain adequate data security. Defendant failed to make such expected expenditures.

99.  Plaintiff would not have provided his sensitive personal information to Defendant in the absence of Defendant's implied promise to keep such information reasonably secure.

100.  Plaintiffs fully performed his obligation under the implied contract by paying money to Defendant and providing his sensitive personal information.

101.  Defendant breached its implied contract with Plaintiff by failing to implement reasonable data security measures, which resulted in the Data Breach.

102.  As a direct and proximate cause of Defendant's breach of the implied contract, Plaintiff sustained the damages and injuries stated herein and Defendant is therefore liable for damages.

**COUNT IV:**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S. 56:8-1 _et seq._)**

103.  Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

104.  Defendant omitted material facts with the intent that Plaintiff rely on them to apply to Columbia University and pay an application fee and employed unconscionable commercial practices, specifically by failing to disclose to Plaintiff that Defendant did not have reasonable or adequate safeguards in place to protect his personal information, which directly and proximately caused Plaintiff an ascertainable loss.

105.  Defendant misrepresented that its services would include reasonable security measures designed to protect the privacy and confidentiality of Plaintiff's sensitive personal

information and that it would supply security services in conformity with its common law and statutory duties.

106.    Defendant omitted, suppressed, and concealed the material fact that in connection with providing its services it did not reasonably or adequately secure Plaintiff's sensitive personal information.

107.    Defendant's misrepresentations and omissions were material because they were likely to and did deceive Plaintiff and other reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of customers' sensitive personal information.

108.    To his detriment, Plaintiff relied on Defendant's misrepresentations and omissions and supplied Defendant with his sensitive personal information and money for Defendant's services.

109.    As a direct and proximate result of Defendant's violations of the NJCFA, Plaintiff has suffered and will continue to suffer injury, ascertainable loss of money or property, and monetary and non-monetary damages, including loss of the benefit of his bargain with Defendant as he would not have paid Defendant for services or would have paid less for such services but for Defendant's violations stated herein.

110.    Defendant knowingly and intentionally violated the New Jersey Customer Security Breach Disclosure Act, N.J.S. 56:8-163, by failing to disclose to Plaintiff a security breach of his personal information in the most expedient time possible and without unreasonable delay.

111.    Defendant therefore violated the New Jersey Consumer Fraud Act, N.J.S. 56:8-2, and is liable for damages under N.J.S. 56:8-2.11 and N.J.S. 56:8-19.

## COUNT V:
### INVASION OF PRIVACY

112. Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

113. Defendant knew the data security protocols it employed with regard to Plaintiff's Private Information were deficient and inadequate to protect this information. Defendant further knew there was a reasonable likelihood Plaintiff's Private Information could be accessed by hackers because it left its systems vulnerable to attacks by cybercriminals. Defendant therefore intentionally intruded into a matter in which Plaintiff has a reasonable expectation of privacy—his Private Information—and this intrusion was highly offensive to a reasonable person.

114. As a result of its failures, Defendant is therefore liable for the damages suffered by Plaintiff.

## COUNT VI:
### BAILMENT

115. Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

116. Plaintiff provided his Private Information to Defendant and Defendant was under a duty to keep this Private Information private and confidential.

117. Plaintiff's Private Information is personal property and was conveyed to Defendant for the certain purpose of keeping the information private and confidential.

118. Plaintiff's Private Information has value and is highly prized by hackers and criminals. Defendant was aware of the risks it took when accepting the Private Information for safeguarding and assumed the risk voluntarily.

119.   Once Defendant accepted Plaintiff's Private Information, it was in the exclusive possession of that information and Plaintiff could not control that information once it was within the possession, custody, and control of Defendant.

120.   Defendant failed to safeguard Plaintiff's Private Information when it neglected to adopt and implement reasonable and adequate data security protocol to prevent the known risk of a cyberattack. Defendant's failure to protect Plaintiff's Private Information resulted in that information being accessed and stolen by third-party cybercriminals.

121.   Defendant is therefore liable to Plaintiff for damages.

**DEMAND FOR RELIEF**

Plaintiff petitions this Court for judgment as follows:

a) Finding that Defendants The Trustees of Columbia University in the City of New York and John Does 1-20 committed the acts or omissions set forth in this Complaint;

b) Finding that such acts or omissions constitute negligence, invasion of privacy, unjust enrichment, and violations of New Jersey law.

c) Granting Plaintiff appropriate equitable relief, including preliminary and permanent injunctive relief barring Defendants from engaging in the tortious conduct and unconscionable commercial practices outlined in this Complaint; specifically, requiring Defendants to destroy all data, information, and documents related to Plaintiff in its possession.

d) Granting Plaintiff compensatory damages of no less than $250,000 or an amount to be determined by a jury;

e) Granting Plaintiff punitive damages of no less than $500,000;

f) Granting Plaintiff nominal damages;

g) Granting Plaintiff reasonable attorneys' fees, expenses, and costs; and

h) Affording Plaintiff any other relief deemed just and appropriate by the Court.

Aakash Dalal
Plaintiff, *pro se*

Dated:        January 28, 2026

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Aakash Dalal

**(b)** County of Residence of First Listed Plaintiff    Bergen County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Aakash Dalal
#792652E
215 Burlington Road South, Bridgeton, NJ 08302

## DEFENDANTS

The Trustees of Columbia University in the City of New York

County of Residence of First Listed Defendant    New York County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**26 CV 1009**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)(1)

Brief description of cause:
Negligence, invasion of privacy, and other claims based on data breach of Columbia University

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   250,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE   01/28/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*

January 28, 2026

**VIA U.S. MAIL**
Clerk of the Court
United States District Court
500 Pearl Street
New York, NY 10007

RECEIVED
SDNY PRO SE OFFICE
2026 FEB -5  AM 10: 59

RE:    **Filing of Complaint / New Civil Action**

Dear Clerk:

Please find enclosed for filing the following documents:

1.    Civil Cover Sheet
2.    Complaint
3.    Summons

A check for $405 payable to the Clerk, U.S. District Court has been enclosed for the filing fee. # 336104

Please issue the Summons and send a conformed copy of both the Summons and the Complaint to my address above.

Thank you for your attention to this matter.

Respectfully submitted:

Aakash Dalal
Plaintiff, *pro se*

Enc.

U.S. POSTAGE P
FCM LG ENV
LODI, NJ 07644
FEB 02, 2026
$3.00
S2324Y500823-C
Retail
10007
RDC 99

SFNY PRO SE OFFICE

2026 FEB -5  AM 11: 10

Pro Se Intake Unit
U.S. District Court
500 Pearl Street
New York, NY 10007

Aakash Dalal
#792652E
215 Burlington Road South
Bridgeton, NJ 08302

U.S.M.J
SDNY